IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COMFORT GATES, § | | |
|     Movant, § | | |
| v. § | | 3:16-cv-2659-N (BT) |
| § | | 3:11-cr-0308-N (BT) |
| UNITED STATES OF AMERICA § | | |
|     Respondent. § | | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Movant Comfort Gates, a federal prisoner, has filed a motion, and two amended motions, under 28 U.S.C. § 2255 to vacate, set aside, or correct her federal sentence. For the following reasons, the Court should deny Movant's request for relief.

I.

Movant challenges her 2013 conviction for conspiracy to commit health care fraud and substantive healthcare fraud offenses. On November 11, 2013, the district court sentenced Movant to 72 months in prison. On September 10, 2015, the Fifth Circuit Court of Appeals affirmed Movant's conviction and sentence.

On December 9, 2016, Movant filed her § 2255 motion, in which she argues:

    1.    The government violated *Brady v. Maryland*, 373 U.S. 83 (1963);

    2.    She received ineffective assistance of trial counsel when:

1

      a. Counsel failed to investigate defenses and interview witnesses; and

      b. Counsel failed to object to a vulnerable-victim enhancement; and

3. She received ineffective assistance of appellate counsel.

## II.

The following facts are taken from the Fifth Circuit's opinion on direct appeal:

> This case involves a complex scheme to fraudulently bill Medicare for services that were never performed. The scheme was devised by Osvanna Agopian (Agopian), who had twice been convicted of healthcare fraud, and carried out by several "foot soldiers," including Defendants–Appellants Gates and Umotong. To effectuate her scheme, Agopian opened two clinics—Medic in Houston, Texas, around July 2009, and Euless Healthcare Corporation (EHC) located in Euless, Texas, a Dallas suburb, around April 2010 (collectively, the Clinics). The Clinics operated as "false-front" clinics: medical operations that bill Medicare for services that are not actually performed. The Clinics were Level 3.0 false fronts, which are the hardest for Medicare to detect because of the sophisticated means, such as visiting actual patients and maintaining patient files, employed to create the illusion of legitimacy.
>
> Agopian's scheme went as follows: The Clinics recruited patients from legitimate home healthcare agencies that would send over a patient's information. To bill Medicare for home visits, home healthcare providers need a doctor or a physician's assistant (P.A.) under a doctor's supervision to certify that such home visits are necessary. Though each clinic had a licensed doctor on staff, Agopian would send employees like Gates and Umotong, who held foreign medical credentials, to the patients' homes to conduct home-health assessments for a licensed clinic doctor to later certify. Agopian instructed the employees to wear lab coats or scrubs

so that patients would recognize them as medical professionals and be more willing to allow them into their homes. She further instructed the employees to tell patients that they were P.A.s from the doctor's office.

Once in a patient's home, the employees, often working in pairs, would collect the patient's information that would later be used for billing. After collecting this information, one employee, usually the technician, would take vital signs, while the other, usually the P.A., would conduct a physical checkup and order the diagnostic tests. These tests were never performed. Instead, Agopian purchased fake diagnostic test results from a diagnostic company.

After conducting patient visits, the employees would return to either Medic or EHC, where they were responsible for completing several forms, which included ordering diagnostic tests, to be placed in the patient's file. A clinic doctor would then sign the forms authorizing tests that were never performed, and Agopian would use those forms to request reimbursements from Medicare. Through this fraudulent scheme, the Clinics received over $1.3 million for office visits and diagnostic tests that never occurred.

By way of the Superseding Indictment, the Government charged Gates, Umotong, Agopian, and several co-conspirators[,] with one count of conspiracy to commit health care fraud under 18 U.S.C. § 1349 for their respective roles in the complex scheme to defraud Medicare. Gates was charged with four substantive counts and Umotong with six substantive counts of healthcare fraud under 18 U.S.C. §§ 1347 and 2. Agopian, the architect of the fraudulent scheme, pled guilty to the charges levied against her in the Superseding Indictment. Gates and Umotong, with [other] co-defendants elected to proceed to trial, at which Agopian and other co-conspirators testified for the Government.

Based on trial evidence demonstrating Gates's and Umotong's participation in Agopian's scheme, the jury found them guilty of conspiracy and the substantive counts of healthcare fraud for which they were charged. After the verdict, both Defendants–Appellants renewed previously urged Rule 29 motions for acquittal. After holding a hearing,

3

>   the district court issued a written order denying Gates's and Umotong's Rule 29 motions for acquittal and Rule 33 motions for a new trial. Though the district court noted that the evidence adduced at trial against Gates and Umotong was "thin," the court ultimately found that it was sufficient to sustain the jury's verdict on the conspiracy charge and "[did] not weigh so heavily against the verdict that a new trial [was] in order." Defendants–Appellants were each sentenced to 72 months imprisonment.

*United States v. Gates*, 624 F. App'x 893, 894-895 (5th Cir. 2015).

                                    III.

**1.    *Brady***

Movant first challenges her conviction and sentence claiming the government failed to disclose evidence in violation of *Brady*. She states co-defendant Agopian filed a § 2255 motion alleging that in exchange for her testimony against Movant, she was promised that the government would file a motion for downward departure under U.S.S.G. § 5K1.1, and she would receive a sentence of no more than 3 to 6 years. Movant argues this information was not disclosed to her. She also claims that, because the government did not file a § 5K1.1 motion in Agopian's case, the government may have determined that Agopian did not give full and complete testimony, but the government failed to disclose this information.

The government responds that Movant's *Brady* claims are procedurally barred because Movant did not raise these claims on direct appeal. When a movant fails to raise a claim on direct appeal, the claim is procedurally defaulted and can only be considered under § 2255 if the movant can show cause for the

4

failure to raise the claim on direct appeal and actual prejudice, or that the movant is actually innocent. *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Movant states she did not raise these *Brady* claims on direct appeal because she was not aware of the claims until Agopian filed her § 2255 motion. The record shows Agopian filed her § 2255 motion less than a month before the Fifth Circuit decided Movant's appeal. Movant therefore, may not have been aware of Agopian's § 2255 claims prior to the decision on her appeal. The Court therefore declines to find her *Brady* claims procedurally barred.

To establish a *Brady* claim, Movant must show the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. *Brady*, 373 U.S. at 87. Evidence is "material" if there is a "reasonable probability" that the outcome of the trial would have been different had the evidence been disclosed to the defendant. *United States v. Freeman*, 164 F.3d 243, 248 (5th Cir. 1999).

Movant has failed to establish a *Brady* violation. At trial, Agopian testified that she pleaded guilty in the case, and that she was testifying for the government in the hope of receiving a lighter sentence. (ECF No. 456 at 47-49.) She also stated she understood her sentence would be decided by the judge. (*Id.* at 49; (ECF No. 457 at 5.)) The government also did not fail to correct false testimony as alleged by Movant. After Agopian testified that her co-defendant husband did not know about the conspiracy, the prosecutor showed that Agopian's trial

5

testimony conflicted with her factual resume in which she admitted that her husband was part of the conspiracy. (ECF No. 457 at 5-7.)

Further, after an evidentiary hearing on Agopian's § 2255 claims, the court determined Agopian's testimony was not credible, and that Agopian's counsel did not promise her that the government would file a 5K1.1 motion or that her sentence would be no more than 3 to 6 years in prison. *See Agopian v. United States*, No. 3:15-cv-2702-N-BF (N.D. Tex.) (ECF No. 11 at 5-6; ECF No. 12.). Movant's *Brady* claim should be denied.

### 2. Ineffective Assistance of Counsel

To sustain a claim of ineffective assistance of counsel, Movant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Movant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a Movant must prove prejudice. To prove such prejudice, Movant must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*,

466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

### A. Investigate and Interview Witnesses

Movant claims her counsel failed to properly investigate the case and interview possible witnesses. Movant, however, fails to state what further investigation should have been conducted, and what favorable evidence would have been uncovered. She has also failed to submit evidence that any witness would have testified favorably for the defense. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (stating that to establish the requisite *Strickland* prejudice, Movant must show that the testimony would have been favorable); *see also, Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ[.]"). Movant's claims should be denied.

### B. Enhancement

Movant claims her counsel was ineffective when counsel failed to object to a "vulnerable victims" enhancement. Movant's habeas counsel states he does not have a copy of the sentencing transcript, but if Movant's sentence was enhanced under U.S.S.G. § 3A1.1(b) for an offense involving a vulnerable victim, then trial counsel was ineffective for failing to object to this enhancement. The record

7

shows the district court did not apply an enhancement under § 3A1.1(b) to Movant. This claim should be denied.

### C. Appellate Counsel

Movant claims appellate counsel was ineffective for: (1) failing to argue the evidence was insufficient to support the conviction; (2) failing to brief the "unanimity of theory" claim; and (3) failing to investigate Movant's ineffective assistance of trial counsel claims.

Movant argues counsel should have argued the evidence was insufficient to support the conviction because the district court, in denying her motion for acquittal, found the evidence that she was guilty of conspiracy to be "thin." Movant does not argue any other basis for finding the evidence insufficient to support the conviction. The record shows that the district court found as follows:

> At trial, the government presented evidence of "concert of action" implying that Umotong and Gates knew of Agopian's scheme. Specifically, the government argued, Umotong and Gates entered into at least an informal agreement with Agopian to commit health care fraud when they continued to work for the Clinics for long enough to understand how the Clinics functioned. There was also evidence of circumstances sufficient to allow a jury to infer that Umotong and Gates knew about the unlawful nature of the Clinics and that they joined the agreement willfully. This evidence is sufficient to prove the charge of conspiracy to commit health care fraud against both Umotong and Gates, and the evidence, though thin, does not weigh so heavily against the verdict that a new trial is in order.

(ECF No. 344 at 21-22.)

A challenge to the sufficiency of the evidence is reviewed "in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *United States v. Njoku*, 737 F.3d 55, 62 (5th Cir. 2013) (citing *United States v. Grant,* 683 F.3d 639, 642 (5th Cir.2012)). In reviewing a sufficiency of the evidence claim, the Court must determine "whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

Here, Movant offers no legal or factual basis for a finding that there is a reasonable probability that had counsel raised this claim on appeal, the appellate court would have rejected the district court's determination that Movant's conviction was supported by sufficient evidence. Movant's claim should be denied.

Movant also argues her counsel was ineffective when counsel raised, but failed to brief, a unanimity of theory argument. Movant, however, has also failed to brief the argument. She has failed to show that had appellate counsel briefed this issue, there is a reasonable probability that the result of her appeal would have been different. This claim should be denied.

Movant argues appellate counsel was ineffective when counsel failed to raise her ineffective assistance of trial counsel claims on appeal. As discussed above, Movant's trial counsel claims are without merit. Movant's appellate counsel was not ineffective for failing to make meritless arguments. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). This claim should be denied.

Finally, Movant argues that trial and appellate counsels' cumulative error entitles her to relief. Movant, however, has failed to establish counsel error. This claim should be denied.

IV.

For the foregoing reasons, the district court should deny Movant's § 2255 motion to vacate, set-aside, or correct sentence.

Signed October 26, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).